**No. 26-5580**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

**JOLITA JEAN,**

**Petitioner – Appellant,**

**v.**

**CHRISTOPHER S. BULLOCK, Acting Field Office Director of Enforcement and Removal Operations, New Orleans Field Office, Immigration and Customs Enforcement,**

**Respondent – Appellee.**

---

On Appeal from the United States District Court for the Western District of Tennessee, Western Division, No. 2:26-cv-02571
The Honorable Brian C. Lea, United States District Judge

---

# **RESPONDENT-APPELLEE'S MOTION TO DISMISS APPEAL AS MOOT**

On June 30, 2026, Petitioner-Appellant Jolita Jean filed a notice of appeal from the district court's denial of her petition for writ of habeas corpus under 28 U.S.C. § 2241 and denial of her motion to alter judgment under Rule 59. Notice of Appeal, RE 15, PageID 69; Order Denying Pet., RE 11, PageID 46-52; Order

Denying Mot. to Alter J., RE 14, PageID 67-68.[1] When Jean filed her notice of appeal, she was detained in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Jean received a bond hearing before an immigration judge twice, on March 9, 2026, and July 2, 2026. *See* March Bond Order, RE 8-4, PageID 29-32; July Bond Order (Ex. 1).[2] The March bond order denied Jean's request for a change in custody because she is "an Arriving Alien," and the immigration judge did "not have the jurisdiction to redetermine bond or custody determinations of Arriving Aliens. . . ." March Bond Order, RE 8-4, PageID 31. But the July bond order reached the merits of Jean's motion for custody determination: the immigration judge denied bond because Jean "failed to meet her burden as to flight." July Bond Order at 1 (Ex. 1).

---

[1] Citations to the record entry (RE) are to filings in the underlying case before the district court, W.D. Tenn. No. 2:25-cv-02571-BCL-atc.

[2] The Court should take judicial notice of the July Bond Order, Voluntary Departure Order, and June Bond Motion. The Court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "This standard applies to appellate courts taking judicial notice of facts supported by documents not included in the record on appeal." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (citing Fed. R. Evid. 201(f) advisory committee's note ("[J]udicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal.")). The accuracy of this bond order "cannot reasonably be questioned," Fed. R. Evid. 201(b), so the Court should take judicial notice of it.

Respondent-Appellee Christopher S. Bullock respectfully moves to dismiss the instant appeal for lack of jurisdiction for two reasons. First, the appeal is moot because Jean received an individualized bond hearing on July 2, 2026—the alternative relief she was seeking. July Bond Order (Ex. 1). Second, on September 18, 2026, Jean agreed to voluntary departure. Vol. Depart. Order (Ex. 2). As part of her agreement, Jean will leave the country on or before January 19, 2027. *Id.* at 1 (Ex. 2). Jean remains detained pending voluntary departure under 8 C.F.R. § 240.25(b), so she is no longer detained under 8 U.S.C. § 1225(b)(2)(A) as the petition alleged. Accordingly, the Court should grant this motion and dismiss this appeal.

## BACKGROUND

Jean is a Haitian citizen and not a citizen of the United States, and ICE detained her at the West Tennessee Detention Center in Mason, Tennessee, as an "arriving alien" under 8 U.S.C. § 1225(b)(2)(A). Pet., RE 1, PageID 2 ¶¶ 1, 3; Notice to Appear, RE 8-1, PageID 19-22. Jean agreed that she "presented at the San Ysidro West Port of Entry on June 9, 2024 through the CBP One program, was found inadmissible under [8 U.S.C. § 1182(a)(7)(A)(i)(I)], served with a[] [Notice to Appear], and then 'was served an I-862 and paroled into the United States, pending a hearing with an Immigration Judge,'" which was scheduled for April 9, 2026. Reply, RE 10, PageID 35; 2024 I-213, RE 8-2, PageID 24; 2024 Notice to Appear,

RE 8-1, PageID 19. When Jean presented at the port of entry on June 9, 2024, she "applied for admission." 2024 Notice to Appear, RE 8-1, PageID 19.

On either October 31, 2025 or December 21, 2025, Tennessee Highway Patrol arrested Jean for evading arrest, and she was found guilty on January 6, 2026. 2026 I-213, RE 8-3, PageID 26. On January 8, 2026, Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") encountered Jean and issued a new Notice to Appear that rescheduled her immigration court proceedings for April 1, 2026. *Id.* at PageID 26-27. On March 9, 2026, Jean had a bond hearing under 8 C.F.R. § 1236 before the immigration judge. *See* March Bond Order, RE 8-4, PageID 29-32. The immigration judge denied bond because Jean is "an Arriving Alien," and the immigration judge did "not have the jurisdiction to redetermine bond or custody determinations of Arriving Aliens. . . ." *Id.* at PageID 31.

Jean filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 on May 20, 2026, approximately five months after ICE ERO detained her and two months after the immigration judge denied bond. *See* Pet., RE 1, PageID 1-8; 2026 I-213, RE 8-3, PageID 25-28; March Bond Order, RE 8-4, PageID 29-32. On May 30, 2026, the district court denied the petition for three reasons: (1) Jean failed to exhaust her administrative remedies because she did not appeal the March bond order to the Board of Immigration Appeals; (2) 8 U.S.C. § 1225(b)(2)(A) required Jean's

detention because she was an arriving alien who had "applied for admission" and was "seeking admission" under that section; and (3) Jean did not establish a due-process violation under *Demore v. Kim*, 538 U.S. 510, 531 (2003). Order Denying Pet., RE 11, PageID 46-52. The district court concluded that *Lopez-Campos v. Raycraft*, 175 F.4th 713, 721, 723 (6th Cir. 2026), did not apply to Jean. *Id.* at PageID 49-51. On June 30, 2026, Jean filed a notice of appeal. Notice of Appeal, RE 15, PageID 69. Jean filed her opening brief on August 11, 2026, and the government's response brief is due by October 9, 2026.

On June 26, 2026, Jean filed a motion for custody redetermination, i.e., another bond hearing, in immigration court. *See* June Bond Motion (Ex. 3). After the hearing, the Immigration Judge denied bond because Jean failed to meet her burden as to flight. July Bond Order (Ex. 1). On September 18, 2026, Jean "made an application solely for voluntary departure in lieu of removal." Vol. Depart. Order at 1 (Ex. 2). The immigration court granted her request, approved "pre-conclusion voluntary departure," and required her to leave the United States on or before January 19, 2027. *Id.* The immigration judge issued an additional "under safeguard" condition for Jean's voluntary departure, and it did not grant her a voluntary departure bond. *Id.*

## **ARGUMENT**

The Court should dismiss the appeal for lack of subject-matter jurisdiction because the case is moot. The Constitution's case or controversy requirement confines the jurisdiction of the courts to "real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character . . . ." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) (internal quotation marks omitted). Accordingly, the Court lacks jurisdiction to consider any case or issue that has "lost its character as a present, live controversy" and thereby becomes moot. *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam). Because the exercise of judicial power under Article III of the Constitution depends on the existence of a live case or controversy, mootness is a jurisdictional question. *Rice*, 404 U.S. at 246. "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005) (quoting *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) (internal quotation marks omitted)).

"The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties . . . ." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (quoting *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992)) (internal quotation marks omitted). When a case is rendered moot during the pendency of the action, the Court

must dismiss the action for lack of subject-matter jurisdiction. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." (internal quotation marks omitted)); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868))).

Before the district court, Jean sought to have her detention classified as pursuant to 8 U.S.C. § 1226(a) and, accordingly, to be afforded a bond hearing. *See* Pet., RE 1, PageID 3 ¶ 9, 12-13 ¶¶ 49-51. After the district court disagreed and determined that her detention was mandatory under 8 U.S.C. § 1225(b)(2)(A), Jean filed this appeal. Notice of Appeal, RE 15, PageID 69. This appeal is moot because Jean received the relief that she has been seeking: on July 2, 2026, she appeared before an Immigration Judge for a custody redetermination, i.e., bond hearing. *See* July Bond Order (Ex. 1). Furthermore, the immigration judge did not deny her bond motion because it lacked jurisdiction because she is an arriving alien. *Id.* Instead, the immigration judge reached the merits of the motion and denied it because Jean did not meet her burden as to flight. *Id.*

Consequently, because Jean received the bond hearing that she sought to procure through litigation before the district court (and now presumably before this Court), no "real and substantial controversy admitting of specific relief through a decree of a conclusive character . . ." remains. *Rice*, 404 U.S. at 246 (internal quotation marks omitted). Stated another way, Jean's case has "lost its character as a present, live controversy." *Hall*, 396 U.S. at 48. Accordingly, the Court should dismiss the appeal for lack of jurisdiction. *See Genesis Healthcare*, 569 U.S. at 72; *Steel Co.*, 523 U.S. at 94.

Furthermore, when Jean agreed to voluntary departure, the basis for her detention changed from 8 U.S.C. § 1225(b)(2)(A) to 8 C.F.R. § 240.25(b), which provides that the government "may attach to the granting of voluntary departure any conditions it deems necessary to ensure the alien's timely departure from the United States, including the posting of a bond, continued detention pending departure, and removal under safeguards." The immigration judge's order reflects that Petitioner was granted voluntary departure "under safeguard." Vol. Depart. Order (Ex. 2). "[T]he term 'voluntary departure with safeguards' is commonly used to characterize the requirement that an alien remain in custody until he or she departs from the United States." *In re M–A–S–*, 24 I. & N. Dec. 762, 766 (B.I.A. 2009). Because Jean is now detained under a different regulation, her petition is moot. *Rice*, 404 U.S. at 246; *Hall*, 396 U.S. at 48; *Genesis Healthcare*, 569 U.S. at 72; *Steel Co.*, 523 U.S.

at 94. Accordingly, the Court should grant this motion and dismiss this appeal for lack of jurisdiction.

DATE: October 5, 2026

Respectfully submitted,

D. MICHAEL DUNAVANT
United States Attorney
Western District of Tennessee

*s/ Audrey M. Calkins*
Audrey M. Calkins (TN BPR # 030093)
audrey.calkins@usdoj.gov
Assistant United States Attorney
U.S. Attorney's Office
167 North Main Street, Suite 800
Memphis, Tennessee 38103
(901) 544-4231

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and Fed. R. App. P. 32(g) because I prepared it with a proportionally spaced typeface using Microsoft Word, printed in 14-point Times New Roman font. As measured by the word processing program used to prepare the document, this motion does not exceed 1,891 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f).

*s/ Audrey M. Calkins*
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I further certify that on October 5, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate electronic filing system. All participants in the case who are registered electronic-filing users will be served by the CM/ECF system.

*s/ Audrey M. Calkins*
Assistant United States Attorney

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**MEMPHIS IMMIGRATION COURT**

Respondent Name:
JEAN, JOLITA

To:
Magloire-Fenelon, Danna France
3918 Via Poinciana
Suite 1
Greenacres, FL 33467

A-Number:
[redacted]

Riders:
In Custody Redetermination Proceedings

Date:
07/02/2026

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑ Denied, because
respondent failed to meet her burden as to flight.

☐ Granted. It is ordered that Respondent be:
- ☐ released from custody on his own recognizance.
- ☐ released from custody under bond of $
- ☐ other:

☐ Other:

Immigration Judge: Tucker, Rhonda 07/02/2026

| | | | | | |
|---|---|---|---|---|---|
| Appeal: | Department of Homeland Security: | ☑ | waived | ☐ | reserved |
| | Respondent: | ☐ | waived | ☑ | reserved |

Appeal Due: 08/03/2026

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : JEAN, JOLITA | A-Number : [redacted]

Riders:

Date: 07/07/2026 By: MCDOWELL, CHALAFONTE, Court Staff

Exhibit 2

# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## MEMPHIS IMMIGRATION COURT

Respondent Name:
JEAN, JOLITA

To:
Naini, Jamshid Baghaie
6645 Stage Road
Memphis, TN 38134

A-Number:
[redacted]
Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
09/18/2026

## ORDER OF THE IMMIGRATION JUDGE

Based on Respondent's admissions, the court has determined that the Respondent is removable from the United States based on the charge(s) set forth in the Notice to Appear. The Respondent has made an application solely for voluntary departure in lieu of removal and has waived appeal of all issues.

**ORDER:** Accordingly, it is HEREBY ORDERED that the respondent be GRANTED pre-conclusion voluntary departure under Immigration and Nationality Act (INA) § 240B(a), in lieu of removal, without expense to the Government, on or before 01/19/2027, or any extensions as may be granted by the Department of Homeland Security (DHS), and under any other conditions DHS may direct.

It is FURTHER ORDERED:

☐ that the Respondent post a voluntary departure bond in the amount of $ USD with DHS on or before .

☐ that the Respondent provide DHS with the Respondent's passport or other travel documentation sufficient to assure lawful entry into the country to which Respondent is departing within 60 days of this order, or within any time extensions that DHS may grant and/or

☑ Other:
under safeguard.

It is FURTHER ORDERED that if any of the above-ordered conditions are not met as required or if the Respondent fails to depart as required, the above grant of pre-conclusion voluntary departure shall be withdrawn without further notice or proceedings and the following order, entered pursuant to 8 C.F.R. § 1240.26(d), shall become immediately effective:
the Respondent shall be removed to on the charge(s) set forth in the Notice to Appear.

It is FURTHER ORDERED that if the above country advises DHS that it is unwilling to accept the Respondent into its territory, or fails to advise DHS within three months following original inquiry whether it will accept Respondent into its territory, the Respondent shall be removed to

The Respondent is HEREBY ADVISED that if the Respondent fails to voluntarily depart the United States within the time specified, or within any extensions that DHS may grant, the Respondent will

be subject to the following penalties:

The Respondent will be subject to a civil monetary penalty as listed in 8 C.F.R. § 280.53(b). *See* INA § 240B(d). The court has set the presumptive civil monetary penalty amount of $3,000.00 USD (or $ USD instead of the presumptive amount).

The Respondent will be ineligible, for a period of 10 years, to receive cancellation of removal, adjustment of status, registry, voluntary departure, or a change in nonimmigrant status. *See* INA § 240B(d).

The Respondent is FURTHER ADVISED that if Respondent files a motion to reopen or reconsider during the voluntary departure period, the period allowed for voluntary departure will not be stayed, tolled, or extended, the grant of voluntary departure will be terminated automatically, the alternate order of removal will take effect immediately, and the above penalties for failure to depart voluntarily under INA § 240B(d) will not apply. 8 C.F.R. §§ 1240.26(b)(3)(iii), (e)(1).

Failure to Depart: If Respondent is subject to a final order of removal and willfully fails or refuses (1) to depart from the United States pursuant to the immigration court's order, (2) to make timely application in good faith for travel or other documents necessary to depart the United States, (3) to present themselves at the time and place required for removal by the DHS, or (4) conspires to or takes any action designed to prevent or hamper their departure pursuant to the order of removal, Respondent shall be subject to a civil monetary penalty for each day Respondent is in violation, pursuant to INA§ 274D and 8 C.F.R. § 280.53(b)(14). If Respondent is removable pursuant to INA § 237(a), then Respondent shall be further fined and/or imprisoned for up to 10 years. See INA § 243(a)(1). Further, any Respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than two years, or both. 8 U.S.C. § 1326(a).

Immigration Judge: Tucker, Rhonda 09/18/2026

Appeal: Department of Homeland Security: ☑ waived ☐ reserved
Respondent: ☑ waived ☐ reserved

Appeal Due:

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : JEAN, JOLITA | A-Number : [redacted]

Riders:

Date: 09/30/2026 By: MCDOWELL, CHALAFONTE, Court Staff

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM

**DETAINED**

Exhibit 3

DANNA MAGLOIRE-FENELON, ESQ.
EOIR ID: NU190214
Adolphe Law Group
3918 Via Poinciana Dr., Suite 1
Lake Worth, FL 33467
Office: 561-660-7776
Fax: 561-660-7082
DMagloire@adolphelawgroup.com

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
MEMPHIS, TN

**In the Matter of:**

**JEAN, JOLITA**
**File No. A#** [redacted]

**Respondent**

**In Removal Proceedings**

**Judge: TBD** **Hearing Date: TBD**

# MOTION FOR CUSTODY REDETERMINATION

EOIR 1 of 65

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM

**DETAINED**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
MEMPHIS, TN

**In the Matter of:**

**JEAN, JOLITA**
**File No. A#[redacted]**
**Respondent**

**In Removal Proceedings**

## MOTION FOR CUSTODY REDETERMINATION

**COMES NOW,** Respondent, Jolita Jean, by and through undersigned counsel, and respectfully moves this Honorable Court for a custody redetermination pursuant to INA § 236(a), 8 U.S.C. § 1226(a), and 8 C.F.R. § 1236.1(d).

The Respondent respectfully requests that this Court exercise its discretionary authority to release her on bond in an amount the Court deems reasonable and appropriate. Ms. Jean is neither a danger to the community nor a flight risk. She has substantial family and community ties, has complied with the immigration process, maintains a pending application for [redacted] and has every incentive to appear for all future proceedings. Continued detention imposes extraordinary hardship upon her three minor children, who have been left without their sole parent and caregiver, and exacerbates her chronic medical conditions. These humanitarian considerations, together with her lack of any criminal history, demonstrated employment history, financial sponsorship, and strong community support, overwhelmingly favor release under the factors articulated in *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006).

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM



In support thereof, Respondent states as follows:

## I. BACKGROUND

1. Respondent is a 34-year-old native and citizen of Haiti who entered the United States on or about June 9, 2024, through the San Ysidro Port of Entry. (*Exhibit A: Haitian Passport: Exhibit B: Form I-94)*).
2. On June 9, 2024, Ms. Jean was issued a Notice to Appear ("NTA") and subsequently placed into removal proceedings and has a pending application for [redacted] before the Miami Immigration Court. (*Exhibit C: Notice to Appear)*.
3. Following her release into the United States, Ms. Jean complied with all immigration requirements. She obtained employment authorization under Category C08, valid through April 30, 2030, secured lawful employment with Tyson Foods, supported her family, and actively pursued her [redacted] application. (*Exhibit D: Employment Authorization Card).*
4. Ms. Jean is presently detained at the West Tennessee Detention Facility. Her A-Number is A[redacted] She is represented by undersigned counsel.

### *A. RESPONDENT IS THE SOLE PARENT AND CAREGIVER OF THREE MINOR CHILDREN WHO ARE SUFFERING IN HER ABSENCE*

5. Ms. Jean is the mother of three minor children (*Exhibit E: Children's Haitian Passport*), all of whom entered the United States with her and currently reside in North Carolina under the emergency care of Ms. Jean's sister:
   - [redacted], Date of Birth: [redacted] (13 years old)
   - [redacted] Date of Birth: [redacted] (9 years old)



EOIR 3 of 65

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM



- [redacted], Date of Birth: [redacted](6 years old)

6. These three children are all enrolled in school in Hertford County, North Carolina, as evidenced by their school records. (*Exhibit F: Children's Report Cards and School Records*). Their father resides in Haiti and has been unable to participate in their upbringing due to serious mental health issues. Ms. Jean is, in every meaningful sense, the only parent these children have ever known.

7. Since her detention, the children have been in the sole physical and financial care of their maternal aunt, [redacted], who is not employed and has no independent income. [redacted] has submitted a sworn declaration describing, in harrowing detail, the emotional and physical toll that Ms. Jean's absence has imposed upon the children: they cry constantly, refuse to eat, cannot sleep, and wake each morning in tears calling for their mother. The youngest child, [redacted], only 6 years old, has regressed to bedwetting as a direct result of the trauma of separation. They have asked their aunt whether their mother is dead. (*Exhibit G: Sworn Declaration of Sister,* [redacted]

8. [redacted] has attested that she cannot provide what these children truly need, which is their mother, and that the financial and emotional burden is significant and growing. The children's school records confirm their continued enrollment and academic participation, but their wellbeing and stability depend entirely on the return of their mother.

9. The wellbeing of these three children, ages 13, 9, and 6, wellbeing depends upon reunification with their mother. Their circumstances constitute compelling humanitarian equities supporting Respondent's release on bond.

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM



### *B. RESPONDENT SUFFERS FROM CHRONIC MEDICAL CONDITIONS THAT REQUIRE CONSISTENT OUTPATIENT MANAGEMENT*

10. Ms. Jean suffers from two chronic medical conditions, asthma and digestive issues, which require consistent medical management and monitoring.

11. On Friday, January 23, 2026, Ms. Jean required medical attention and was transported from the detention facility to a hospital for evaluation and treatment of her conditions. This episode underscores that her chronic conditions require a level of consistent, responsive care that the detention setting has not been able to reliably provide.

12. Ms. Jean's asthma is a chronic respiratory condition that requires consistent access to medication and monitoring, and that can be aggravated by stress and environmental factors common in detention settings. Her digestive condition similarly benefits from appropriate dietary accommodations and routine medical follow-up. Her hospitalization in January 2026 demonstrates that her conditions require ongoing attention and a stable care environment.

13. Release would permit Respondent to obtain consistent medical care while continuing to appear for all immigration proceedings.

### *C. RESPONDENT HAS FINANCIAL SUPPORT UPON RELEASE*

14. Her pastor, [redacted] an American citizen and business owner in Stuart, Florida, has known Ms. Jean since July 2024 and has described her as a responsible and hardworking mother who has always placed her children's welfare above all else. He has agreed to serve as her financial sponsor and has submitted a Form I-134 Declaration of Financial Support on her behalf, as well as a financial support letter from his business, Phapha Cargo Services. His 2025 federal tax

EOIR 5 of 65

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM



return reflects an adjusted gross income of $59,143, and he is fully prepared to provide Ms. Jean with housing and financial support upon her release. Pastor [redacted] wife, [redacted], has also joined in supporting Ms. Jean. (*Exhibit H: Pastor* [redacted] *and Spouse,* [redacted] *Permis' Identifications, with Income and Tax Documentations*).

15. Ms. Jean's character is further attested by the sworn declaration of her sister, [redacted], who describes her as a person of strong moral character, a devoted mother, and a tireless worker who sacrificed everything for her children. The totality of the evidence establishes that Ms. Jean poses no risk whatsoever to public safety. (*Exhibit I: Church Letter*).

## II. ARGUMENT

### A. *A SUBSEQUENT BOND HEARING IS AUTHORIZED BECAUSE RESPONDENT'S CIRCUMSTANCES HAVE CHANGED MATERIALLY SINCE THE PRIOR RULING*

16. Under 8 C.F.R. § 1003.19(e), after an initial bond determination, an Immigration Judge may consider a subsequent request for a bond redetermination upon a showing that the respondent's circumstances have changed materially since the prior decision. Respondent's prior request was denied solely on jurisdictional grounds, not on the merits of flight risk or danger. Three independent material changes now warrant reconsideration.

17. **Change in controlling law.** After the prior denial, the United States Court of Appeals for the Sixth Circuit decided *Lopez-Campos v. Raycraft*, Nos. 25-1965/1969/1978/1982 (6th Cir. May 11, 2026) (recommended for publication), which directly rejected the statutory interpretation underlying the prior denial of jurisdiction. A change in binding circuit authority on the precise legal question previously decided is a paradigmatic material change under 8 C.F.R. § 1003.19(e).

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM



18. **Change in the duration of detention.** Respondent has now been detained continuously since November 2025, a period of approximately seven months. The sustained and now-prolonged length of detention is itself a materially changed circumstance bearing directly on the constitutional reasonableness of continued confinement without an individualized hearing.

19. **Constructive denial of parole.** Respondent submitted a request for parole under INA § 212(d)(5) in April 2026. That request has remained pending without decision for more than two months. The effective foreclosure of the only administrative avenue for release that the Government contends is available is a further material change since the prior ruling.

### *B. THE COURT HAS AUTHORITY TO CONDUCT A BOND HEARING; THE PRIOR JURISDICTIONAL BASIS FOR DENIAL IS NO LONGER VALID UNDER BINDING SIXTH CIRCUIT PRECEDENT*

20. Respondent's prior bond request was denied for lack of jurisdiction pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), under which the Board concluded that any noncitizen who has not been admitted is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), thereby stripping the Immigration Judge of authority to set bond under 8 U.S.C. § 1226(a). That premise no longer governs in this Circuit.

21. In *Lopez-Campos v. Raycraft*, the Sixth Circuit held that 8 U.S.C. § 1225(b)(2)(A) does not apply to noncitizens apprehended in the interior of the United States after having resided here, that such persons are properly detained under 8 U.S.C. § 1226(a), and that their detention without an individualized bond hearing violated the Fifth Amendment Due Process Clause. The court reasoned that to fall within § 1225(b)(2)(A), a noncitizen must be actively "seeking admission," and that a person who has passed beyond the threshold of initial entry and resided

in the community is not. As the court explained, the petitioners "were due individualized bond hearings in light of the significant time they have spent within the interior of the United States."

22. Decisions of the court of appeals for the circuit in which the Immigration Court sits are binding and control over contrary Board precedent. See *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (courts independently determine the meaning of a statute and do not defer to an agency's interpretation). Because the Memphis Immigration Court sits within the Sixth Circuit, *Lopez-Campos* controls, and *Matter of Yajure Hurtado* no longer supplies a valid basis to deny jurisdiction. Consistent with this precedent, immigration judges in the Sixth Circuit have resumed conducting bond hearings.

23. The Government may contend that Respondent is distinguishable from the *Lopez-Campos* petitioners because she presented at the San Ysidro Port of Entry on June 9, 2024, and was paroled into the United States under INA § 212(d)(5), and is therefore an "arriving alien" as to whom the Immigration Judge lacks custody jurisdiction under 8 C.F.R. § 1003.19(h)(2)(i)(B). That argument fails for the reasons set forth below.

24. **The "arriving alien" classification does not control where, as here, the parole grant has long since served its purpose and Respondent was re-detained in the interior more than a year later.** The regulatory bar at 8 C.F.R. § 1003.19(h)(2)(i)(B) was designed for noncitizens processed and held within the inspection-and-admission stream of § 1225, not for a person who was paroled into the country, released into the community, complied with her obligations, filed an application for [redacted], and was apprehended approximately seventeen months later. The federal courts in this district have squarely rejected the Government's attempt to extend mandatory § 1225 detention to noncitizens apprehended in the interior, even when the Government has charged them as "arriving aliens," holding instead that § 1226(a) governs and that such persons are entitled to a bond hearing. See *Godinez-Lopez v. Ladwig*, No. 25-2962,

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM



2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025).

25. Moreover, the Board itself has recognized that the statutory category of "applicant for admission" under § 1225(a)(1) is broader than, and not coextensive with, the regulatory term "arriving alien" that triggers the custody bar. See *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025) (declining to decide whether the respondent was an "arriving alien" under 8 C.F.R. § 1001.1(q) and resting instead on the broader statutory category). Whether the regulatory bar reaches a long-paroled, interior-arrested [redacted] applicant is a legal question this Court may decide, and one that must be resolved in light of the serious constitutional concerns raised by indefinite detention without review.

## C. *INDEPENDENT OF THE STATUTORY CLASSIFICATION, THE FIFTH AMENDMENT REQUIRES AN INDIVIDUALIZED BOND HEARING AFTER SEVEN MONTHS OF DETENTION*

26. Even if the Court were to find both the statutory and regulatory bars applicable, the Fifth Amendment imposes an independent constitutional floor that no statute or regulation may eliminate. Freedom from physical detention is "the most fundamental interest protected by the Due Process Clause" and is shared by citizens and noncitizens alike. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), expressly left open whether prolonged detention without a bond hearing violates due process, and the courts of appeals, including the Sixth Circuit, have recognized that it does.

27. The Sixth Circuit has long held that detention pending removal is permissible only for "a time reasonably required to complete removal proceedings in a timely manner," and that "if the process takes an unreasonably long time, the detainee may seek relief." *Ly v. Hansen*, 351 F.3d

263, 269-70 (6th Cir. 2003). In *Lopez-Campos*, the court reaffirmed that the failure to provide a bond hearing to noncitizens detained for a significant period in the interior violates due process. Courts evaluate reasonableness through the fact-specific balancing framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976), weighing the length of detention, the likelihood it will continue, the reasons for delay, and whether the conditions of confinement are meaningfully different from criminal punishment.

28. **Length of detention.** Respondent has been detained for approximately seven months without any individualized hearing before a neutral adjudicator. This duration exceeds what courts have found presumptively reasonable and weighs heavily in Respondent's favor.

29. **Likelihood of continued detention.** Respondent's [redacted] case remains pending and unresolved. No final order of removal has issued and none is imminent. Absent relief, Respondent faces continued detention for the entire remaining duration of her removal proceedings and any administrative or judicial review, an indeterminate and potentially lengthy period. This factor weighs in Respondent's favor.

30. **Reasons for delay.** The Government may emphasize that Respondent requested two continuances of her merits hearing. That fact does not weigh against her. First, requesting time to prepare and present an application for [redacted] is the exercise of a statutory right under INA § 208, not dilatory conduct, and a respondent may not be penalized for exercising the right to defend against removal. See *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015) (a noncitizen cannot be effectively punished for choosing to exercise the legal right to challenge the Government's case by treating the resulting increase in detention as reasonable). Second, the continuances were sought for legitimate cause; continuances are routine in [redacted], and detained applicants face heightened obstacles in gathering evidence, securing documentation, and preparing for a merits hearing while confined.

31. Third, and dispositively, the continuances did not cause Respondent's detention. Respondent has remained in custody since November 2025 because no bond hearing was ever held, a consequence solely of the Government's erroneous and now-overruled jurisdictional position. Had a constitutionally adequate bond hearing been conducted when Respondent was first detained, she might have been released before any continuance was sought. The Government cannot rely on continuance-related delay to justify confinement that both predated and would have persisted regardless of the continuances. This factor is, at most, neutral, and cannot overcome the weight of the length and anticipated duration of detention.

32. **Conditions of confinement.** Respondent is held at the West Tennessee Detention Facility, a secure correctional facility operated under contract by a private prison operator. Civil immigration detention in a facility operationally indistinguishable from criminal incarceration weighs in Respondent's favor, because "merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures." This factor favors Respondent.

33. On balance, the reasonableness factors weigh decisively in favor of a bond hearing. The length of detention, the indeterminate likelihood of continued detention, and the punitive conditions of confinement all favor Respondent; the reason-for-delay factor is at most neutral. After seven months of detention without any individualized review, due process requires that Respondent be afforded a bond hearing at which the Government bears the burden of justifying continued detention by clear and convincing evidence. See *Black v. Decker*, 103 F.4th 133, 149-50 (2d Cir. 2024).

34. The constructive denial of parole confirms the constitutional necessity of relief. Respondent's April 2026 parole request has gone unanswered for more than two months. The Government cannot maintain that an adequate administrative remedy exists where its own agency has, through inaction, effectively foreclosed the only avenue of release it contends is available. A

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM



detainee deprived of any meaningful path to release for seven months presents the clearest case for the individualized hearing the Constitution requires.

### *D. RESPONDENT IS NEITHER A DANGER TO THE COMMUNITY NOR A FLIGHT RISK AND SHOULD BE RELEASED ON BOND*

35. Should the Court reach the merits of bond eligibility, the factors set forth in *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006), weigh strongly in favor of release on bond.

36. **No danger to the community.** Respondent has no criminal history of any kind. There is no individualized finding, and no basis for any finding, that she poses a danger to persons or property. She came to the United States fleeing the dire and well-documented conditions of instability, violence, and insecurity in Haiti.

37. She has complied with all conditions of her immigration proceedings and was granted employment authorization, which she utilized to work lawfully at a Tyson Food Factory, supporting her children and contributing to her community.

38. **No flight risk.** Respondent has a pending, bona fide application for [redacted]. An applicant actively pursuing relief has the strongest possible incentive to appear, because abandonment of proceedings would forfeit her claim. Respondent presented herself at a port of entry, was paroled, complied with her conditions of release and reporting obligations, and filed her [redacted] Her requests to continue the merits hearing in order to prepare her case further demonstrate her engagement with, rather than evasion of, the proceedings.

39. **Strong equities.** Respondent has good equities, including community ties and a record of compliance with immigration authorities prior to her detention. The pendency of her parole request, which the Government has not denied, further reflects that she is an appropriate candidate for release. The Court should set a reasonable bond and consider Respondent's ability



EOIR 12 of 65

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM



to pay and alternatives to detention in fixing its amount and conditions.

40. The Administration's January 20, 2025 Executive Order "Protecting the American People Against Invasion" directs enforcement resources toward aliens who "threaten the safety or security of the American people," including those with gang affiliations, criminal records, and connections to transnational criminal organizations. Ms. Jean falls entirely outside that profile. She has no criminal history of any kind, no gang affiliation, no connection to any criminal organization, no security concern of any nature, and no adverse law enforcement contact. She is a working single mother who obtained employment authorization, worked lawfully, and sought legal representation. She is precisely the type of individual for whom ICE's retained humanitarian parole authority exists: a person who presents no enforcement interest and whose continued detention serves no public safety purpose.

41. Ms. Jean has compelling reasons to remain in the United States, appear at all future hearings, and comply with all conditions of release. Her three minor children, who depend on her entirely, are here. She has a pending [redacted] case. She has legal representation. She has a financial sponsor prepared to house and support her. She has employment authorization and a demonstrated work history. These ties are not merely theoretical; they are the fabric of her daily existence and the reason she cannot and will not flee.

42. The prospect of abandoning her children, particularly her 6-year-old, who is already experiencing profound psychological regression as a result of the separation, makes flight utterly implausible. Ms. Jean's children are her entire world, and she has a powerful and overriding interest in remaining present for them and resolving her immigration case.

43. Ms. Jean has demonstrated a consistent commitment to lawful compliance throughout her proceedings. She obtained employment authorization, maintained lawful employment, and sought legal representation. She is actively pursuing her [redacted] claim and has not taken any



EOIR 13 of 65

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM



action inconsistent with a genuine intent to participate in the legal process. There is no evidence whatsoever to suggest she would flee.

44. Upon release, Ms. Jean will: (1) reside at the home of her sponsor, [redacted], located at [redacted] Stuart, Florida [redacted], or with her sister, [redacted], in [redacted], North Carolina; (2) report to ICE as required under all conditions of parole; (3) maintain regular contact with undersigned counsel; (4) resume lawful employment pursuant to her valid Employment Authorization Document; (5) appear at all scheduled immigration court proceedings without exception; and (6) ensure that her three minor children appear at their own immigration court hearing, as she is responsible for their appearance. Counsel will ensure that Ms. Jean is fully informed of and compliant with every condition of her release.

## III. CONCLUSION

For the foregoing reasons, Respondent respectfully requests that this Honorable Court grant this Motion for Custody Redetermination and order her release on bond in an amount the Court deems reasonable and appropriate. The record demonstrates that Ms. Jolita Jean is neither a danger to the community nor a flight risk. She has no criminal history, has complied with the immigration process, maintains a pending application for [redacted] , and has established significant family and community ties within the United States. She is a devoted mother of three minor children, all of whom depend upon her as their sole caregiver and primary source of emotional and financial support. Her continued detention has imposed extraordinary hardship upon her children and has exacerbated her chronic medical conditions, while serving no legitimate public safety or flight-risk concern.

The favorable factors identified in *Matter of Guerra* overwhelmingly support her release. Ms. Jean has demonstrated good moral character, a history of lawful employment, strong community support, a verified residence upon release, and a financial sponsor willing to assist her throughout these

proceedings. She has every incentive to appear for all future hearings and to comply fully with any conditions this Court may impose.

Accordingly, Respondent respectfully requests that the Court exercise its discretion to grant this Motion for Custody Redetermination and order her release on bond under such terms and conditions as the Court finds just and proper.

Respectfully submitted,

/s/ *Danna Magloire-Fenelon*

Danna Magloire-Fenelon, Esq.
FL Bar: #0047354

Uploaded on: 06/26/2026 at 03:01:00 PM (Central Daylight Time) Base City: MEM

**DETAINED**

=

**JEAN, JOLITA**
(Name of alien or aliens)

**A [redacted]**
(A number" of alien or aliens)

**PROOF OF SERVICE**

On **06/26/2026**, I, **Danna Magloire-Fenelon**,
(date) (printed name of person signing below)

served a copy of this

**MOTION FOR CUSTODY REDETERMINATION**

(name of document)

and any attached pages to **WEST TENNESSE MEMPHIS DETENTION FACILITY**
.
(name of party served)

at the following address **6299 Finde Naifeh Drive, Mason TN 38049**,
(address of party served)

by **eService**
(method of service, for example overnight courier, hand-delivery, first class mail, ICE OPLA eService)

This document was electronically filed through ECAS, and both parties are participating in ECAS. Therefore, no separate service was completed.

/s/ *Danna Magloire-Fenelon* 06/26/2026
(signature) (date)